[S. F. No. 2689.   Department Two.—September 23, 1903.]

ELSIE A. ANTONELLE, Respondent, v. KENNEDY & SHAW LUMBER COMPANY, Appellant; J. S. ANTONELLE, and ANTONELLE & DOE, Interveners, Appellants.

CONTRACT—CONSTRUCTION—CONSENT OF THIRD PARTY—COVENANT—CONDITION PRECEDENT—FORFEITURE.—A stipulation in a contract for the payment of money to the plaintiff by the defendant, that the plaintiff shall obtain the consent of a third party, the divorced husband

of plaintiff, who refused to give his consent, is to be viewed rather as a covenant than as a condition precedent. Conditions precedent are not favored in law, and are to be strictly construed against one seeking to avail himself of them, especially when a strict construction of such condition would work a forfeiture, a result which the law will always endeavor to prevent.

ID.—ESTOPPEL OF DEFENDANT—BREACH OF CONTRACT—DISCHARGE OF CONDITION.—The defendant will not be permitted to insist that the consent of such third party shall be obtained by the plaintiff, at all events, as a condition precedent and thereby to retain money justly payable to the plaintiff and upon which the defendant has no moral or meritorious legal claim, where the defendant, by its own act in departing from the terms of its contract with the plaintiff, has rendered the performance of the condition nugatory. Such conduct of the defendant operated as a discharge of the condition.

ID.—PAYMENT UPON INDEBTEDNESS OF FIRM—REIMBURSEMENT OUT OF ASSIGNED CLAIMS OF FIRM—VALIDITY OF CONTRACT—OBJECTION UPON APPEAL.—Where the plaintiff made an advance of fifteen thousand dollars to be credited by defendant upon the indebtedness to the defendant of a partnership firm of which her husband was a member, which firm had assigned to defendant certain claims for collection to be applied upon such indebtedness, and it was agreed between plaintiff and defendant that any surplus of the proceeds collected upon such claims should be applied toward the reimbursement of plaintiff's advance, provided before that time she should obtain and deliver to defendant the written consent of her husband, and the defendant failed to credit said sum, and took judgment for the full amount of the indebtedness of the firm, which the proceeds of the claims were insufficient to pay,—the defendant cannot escape the obligation to reimburse the plaintiff, either on the ground that the consent of the husband was not first obtained, or on the ground of the alleged invalidity of the contract to reimburse plaintiff out of the assigned claims of the firm, when objection thereto is urged by defendant for the first time upon appeal.

ID.—ASSIGNED CLAIMS DEALT WITH AS PROPERTY OF DEFENDANT.—Under the circumstances of the case and for all practical purposes, the uncollected money on the assigned claims was the property of the defendant, and when it dealt with the plaintiff on that basis and in harmony with that fact, and did not insist on any consent of the firm as such to its contract with plaintiff, it cannot urge the invalidity of such contract, on the ground that it infringed upon the rights of the firm.

ID.—PLEADING OF CONTRACT—VARIANCE—OMISSION CURED BY ANSWER. —Where the complaint did not set forth the contract *in hæc verba,* nor make mention of the provision concerning the obtaining of the consent of the plaintiff's divorced husband, but the legal

effect of the contract as relied upon by the plaintiff was pleaded, and the complaint stated a cause of action, any variance between the contract as pleaded and proved is cured where the defendant set out the contract in full in its answer and pleaded non-compliance with the condition as to consent; and the defendant cannot claim that it was misled by the variance to its prejudice.

ID.—INTERVENTION BY FIRM—CONSENT TO JUDGMENT—ABSOLUTE ASSIGNMENT.—Where the firm intervened and claimed the proceeds to which plaintiff was entitled under the terms of her contract with the defendant, but it appears that the firm had consented to the judgment taken against it, without the credit agreed upon between plaintiff and defendant, and had made an absolute assignment of its claims to the defendant, which were insufficient to pay the judgment consented to, the firm, as such intervener, cannot object to the enforcement of the plaintiff's contract against the defendant to which the firm was no party.

ID.—INTERVENTION BY MEMBER OF FIRM.—The former husband of the plaintiff, who was a member of the firm, intervening in his own right, has no shadow of claim, individually or otherwise, to any of the money paid by the plaintiff on the firm's indebtedness to the defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

William H. Jordan, for Kennedy & Shaw Lumber Company, Appellant.

The consent of J. S. Antonelle was a condition precedent of the liability of the defendant under the contract with plaintiff. (Civ. Code, sec. 1436; *Van Horne* v. *Dorrance*, 2 Dall. 304; Fed. Cas. No. 16,857; *Northup* v. *Northup*, 6 Conn. 196; *Cohey* v. *Lehman*, 79 Ill. 173; *Packard* v. *Van Schoick*, 58 Ill. 80; *Hambly* v. *Delaware Ry. Co.*, 21 Fed. 541; *Perryman* v. *Trustees etc.*, 14 Bush. 75; *Griggs* v. *Moore*, 168 Mass. 354; *Cowan* v. *Phœnix Ins. Co.*, 78 Cal. 181; *McLaughlin* v. *Clausen*, 85 Cal. 322; *Pacific Rolling Mills* v. *English*, 118 Cal. 123; *Smith* v. *Luning Co.*, 111 Cal. 309; *Frisbie* v. *Moore*, 51 Cal. 516; *Hodges* v. *Holeman*, 1 Dana, 50; *Veazie* v. *City of Bangor*, 53 Me. 50.) The condition was not pleaded, and the variance was fatal. (*Daley* v. *Russ*, 86 Cal.

114; *Barron* v. *Frink,* 30 Cal. 486; *Holmes* v. *Richet,* 56 Cal. 307.[1])

A. A. Sanderson, for Antonelle & Doe, Interveners, Appellants.

The money of the firm could not be paid over to a third person without the consent of the firm. The consent of J. S. Antonelle, as a member of the firm, was a condition precedent. (Bouvier's Law Dictionary, title "Conditions Precedent"; *McLaughlin* v. *Clausen,* 85 Cal. 322; *Cowan* v. *Phœnix Ins. Co.,* 78 Cal. 181.) The complaint was insufficient. (4 Ency. of Plead. & Prac., pp. 627, 628.)

A. Everett Ball, for J. S. Antonelle, Intervener, Appellant.

Antonelle was entitled to any balance under the agreement. The debts of the partnership must be discharged before any individual debt can be paid. (*Chase* v. *Steel,* 9 Cal. 64; *Golden State etc. Works* v. *Davidson,* 73 Cal. 389.)

Bishop & Wheeler, and Garber, Boalt & Bishop, for Respondent.

Prevention of performance by the action of the defendant excused performance by the plaintiff. (Civ. Code, sec. 1512; *Houghton* v. *Steele,* 58 Cal. 421, 424; *Hawley* v. *Keeler,* 53 N. Y. 114; *Marshall* v. *Craig,* 1 Bibb, 379.[2]) Conditions precedent are not favored in law. (*McDonald* v. *Chosen Friends,* 78 Cal. 58; *Front-Street R. R. Co.* v. *Butler,* 50 Cal. 574; *Randol* v. *Scott,* 110 Cal. 595, 597; *Deacon* v. *Blodgett,* 111 Cal. 416; *Tipton* v. *Feitner,* 20 N. Y. 423.) The ascertainment of the balance by the mode fixed by the contract was a condition precedent to any action on the part of plaintiff. (*United States* v. *Robeson,* 9 Pet. 319, 326; *Hamilton* v. *Liverpool etc. Ins. Co.,* 136 U. S. 242.) The provision for the consent of Antonelle was a covenant, and not a condition precedent. (Civ. Code, sec. 1442; 2 Parsons on Contracts, 7th ed., sec. 511; Wharton on Contracts, sec. 555; *Holladay* v. *Frisbie,* 15 Cal. 631, 635; *Paschall* v. *Pasmore,* 15 Pa. St. 295, 303; *Barruso* v. *Madan,* 2 Johns. 144, 148; *Front-Street R. R. Co.* v. *Butler,* 50 Cal. 574, 577; *Tipton* v. *Feitner,* 20

[1] 38 Am. Rep. 54.          [2] 4 Am. Dec. 647, 654.

N. Y. 423, 432.)   The plaintiff elected to declare on the con-
tract according to its legal effect without setting out *in hæc
verba,* which was proper practice.   (*Stoddard* v. *Treadwell,*
26 Cal. 294, 303; *Love* v. *Sierra Nevada etc. Co.,* 32 Cal. 639,
650;[1] *Hallock* v. *Jaudin,* 34 Cal. 167; *White* v. *Soto,* 82 Cal.
654; *Murdock* v. *Brooks,* 38 Cal. 596, 603.)    There was no
misleading variance.   (Code Civ. Proc., sec. 469; *Carter* v.
*Baldwin,* 95 Cal. 475, 478; *Amador Gold Mine, Limited,* v.
*Amador Gold Mine,* 114 Cal. 346, 348.)    Any defects were
cured by the answer.   (*Daggett* v. *Gray,* 110 Cal. 169; *Vance*
v. *Anderson,* 113 Cal. 532, 536; Pomeroy's Remedies and
Remedial Rights, sec. 579; *Schenck* v. *Hartford etc. Ins. Co.,*
71 Cal. 28; *Cohen* v. *Knox,* 90 Cal. 266, and cases cited on
p. 268.)    Antonelle & Doe have nothing to complain of if the
money is paid to plaintiff under the contract to which they
are not parties.   Antonelle has no standing as an intervener.

LORIGAN, J.—In January, 1891, plaintiff was the owner
of two certificates of deposit aggregating thirty-four thou-
sand dollars, issued by the People's Home Savings Bank in
favor of, and held by, one B. O. Carr.   The Kennedy & Shaw
Lumber Company, defendant, having brought suit against
the firm of Antonelle & Doe, intervener, caused an attach-
ment to issue and levied it upon certain real property of
plaintiff, and garnisheed said certificates and the funds repre-
sented thereby in the hands of said Carr, on the claim that
said land and money were the property of said J. S. Antonelle,
husband of said plaintiff, and one of the interveners herein.
The plaintiff, for the purpose of releasing her property from
the attachment, entered into an agreement—executing it as
Mrs. J. S. Antonelle—with said Kennedy & Shaw Lumber
Company, the essential parts of which for the purpose of this
decision, and after the preliminary recitals therein, are:
"Therefore, it is hereby covenanted and agreed, that the said
Mrs. J. S. Antonelle will, and she does hereby, relinquish and
release to the said Kennedy & Shaw Lumber Company, all her
right, title, interest and claim in, and to, the sum of $15,000
of said money, and direct the said Carr to pay the same over
to the said Kennedy & Shaw Lumber Company, to be applied
by the said company upon its claim against the firm of An-

[1] 91 Am. Dec. 602.

tonelle & Doe, for the collection of which claim the said action has been brought. In consideration of the said relinquishment of the payment of said sum of $15,000 and the keeping of the covenants herein contained by the said Mrs. J. S. Antonelle, the said Kennedy & Shaw Lumber Company does hereby covenant and agree, to credit the said sum of $15,000, when so paid upon said claim. . . . And furthermore, the said Kennedy & Shaw Lumber Company does hereby promise, and agree to continue the prosecution of its suit for the collection of certain funds due from the board of state harbor commissioners and from the board of city hall commissioners, and when said funds have been collected, to apply from the proceeds thereof, enough money to discharge, in full, the amount ascertained to be due and unpaid from the said Antonelle & Doe to the said Kennedy & Shaw Lumber Company, either by final judgment in, or compromise of, the aforesaid suit entitled Kennedy & Shaw Lumber Co. v. J. S. Antonelle et al., together with all accrued interest and costs. . . . and thereafter, to pay over to the said Mrs. J. S. Antonelle the remainder of said funds; provided that the said Mrs. J. S. Antonelle shall, before that time, have obtained and delivered to the said Kennedy & Shaw Lumber Company the written consent thereto of J. S. Antonelle, a member of said firm of Antonelle & Doe.''

Upon the execution of this agreement fifteen thousand dollars of the plaintiff's said money was paid over to the lumber company as agreed, but instead of crediting it on the claim in the suit against Antonelle & Doe, and taking judgment against this latter firm for the balance due only, it gave no such credit, but proceeded with its suit, and, some twenty days after this fifteen thousand dollars was paid, had judgment entered up against said firm for the full amount of its claim and interest, amounting to $36,713.74. If it had applied this fifteen thousand dollars as a credit on its claim when it was received, and taken judgment for the balance remaining unpaid, the amount of the judgment would have been but $20,488.69.

After the entry of such judgment the lumber company collected the amounts from the city hall and harbor commissioners, mentioned in the contract between plaintiff and the

lumber company, aggregating $29,365.42. If the lumber company had taken judgment as above indicated, against said firm of Antonelle & Doe for but $20,488.69, the application on such judgment of a sufficient amount received from the said commissioners to have discharged it, would have left a balance in the possession of the lumber company of $8,454.44, which, under the contract, would have been payable to the plaintiff, and to recover which amount this action is now brought, and from a judgment in her favor against the lumber company and the interveners, both the company and the interveners appeal.

The merits of each appeal will be separately considered, and taking up that of the lumber company first, the only points which it makes, aside from challenging some of the findings and insisting on errors of law, are,—1. That as a condition to her right to maintain this action against the company, the plaintiff should have alleged and proved, the obtaining and delivery to it, of the stipulated written consent of J. S. Antonelle; and 2. That the contract to pay over to plaintiff this money, is illegal and void, because it is a promise to turn over to plaintiff the property of a third party—Antonelle & Doe. It may be mentioned in passing that at the time this contract was entered into between the plaintiff and the said company, a suit for divorce between the plaintiff and her husband, J. S. Antonelle, was pending, and prior to the trial of this present action a decree of divorce had been entered. It is also a fact that plaintiff did not obtain, or deliver, to the company the said written consent of Antonelle, he having refused to execute it.

Now, to return to the merits of the appeal. Assuming that the stipulation on the part of the plaintiff to obtain Antonelle's consent was a condition precedent, it is well settled that such conditions are not favored by the law, and are to be strictly construed against one seeking to avail himself of them. (*Front-Street R. R. Co.* v. *Butler,* 50 Cal. 577; *Deacon* v. *Blodgett,* 111 Cal. 418.) More particularly does this follow, when a strict construction of such condition would work a forfeiture; a result which the law will always endeavor to prevent.

Equally is it true, that a party will not be permitted to

insist on the performance of a condition precedent when, by his own act, or a departure from the terms of the contract, it is found he has prevented the performance of such condition. (1 Wharton on Contracts, secs. 312-603; *Hawley* v. *Keeler,* 53 N. Y. 121; *Houghton* v. *Steele,* 58 Cal. 421.) In the light of these principles, let us see what was agreed to be done by the parties, because, if plaintiff's right of recovery is to be measured by a compliance with the terms of the contract as a condition precedent, she has a right to equally insist, that all conditions which were to be performed by the lumber company, preliminary to her necessity of obtaining Antonelle's consent, should be also strictly performed. The same standard of measurement should be applied to the company that it holds out to the plaintiff, especially as it is urging a strict construction of the contract, and insists thereby on retaining money to which it has, itself, neither moral, nor meritorious legal claim.

Examining the contract then, the plaintiff was to obtain and deliver to the lumber company Antonelle's written consent that the ''remainder'' of a particular fund be paid to her. This ''remainder'' was to be determined in a designated method; no other method was provided for, and plaintiff did not agree to obtain Antonelle's consent to the payment of a sum ascertained in any other way. Immediately upon receipt of the fifteen thousand dollars defendant proceeded to violate the contract, and pursued a method which not only did not create any ''remainder'' in plaintiff's favor, but, by its process of applying plaintiff's money, made it impossible that there should ever be any ''remainder.'' It did not credit the payment on the claim, but took judgment for the entire debt. In fact, by its process of violating the agreement, instead of there being any ''remainder,'' there was a deficiency of upwards of six thousand dollars. It neither literally nor substantially complied with the contract; it ignored it entirely.

The plaintiff doubtless anticipated, that by immediately deducting from its claim in suit the fifteen thousand dollars paid by her, that the judgment to be taken by the company for the amount then ''due and unpaid,'' would be so much less than the sums to be obtained by the company from the city hall and harbor commissioners, that it would leave a re-

mainder for her benefit.  But by departing from the method
prescribed for ascertaining it, the company itself made it
impossible that there should be any, and hence, there was
nothing under the terms of the agreement for Antonelle to
consent to.  The agreement, too, of the company to pay this
money on the claim at once, thus reducing the amount for
which judgment was to be taken, and to pursue the method
devised for ascertaining and determining the "remainder of
the fund," was as much a condition precedent, to be strictly
followed, as was the agreement of plaintiff to obtain Anto-
nelle's consent, and as the company prevented the ascer-
tainment of such remainder, as provided by the contract and
contemplated by the parties, its conduct operated as a dis-
charge of the condition.

Counsel for the company admit that credit for the fifteen
thousand dollars was "inadvertently omitted, and the judg-
ment, therefore, appears to that extent in excess of the amount
then actually due."  This is an explanation, but the contract
nowhere provides any excuse for these omissions.  Immediate
application of this money to the claim in suit, was the im-
portant stipulation in the contract; and it was this imme-
diate credit, to lessen the amount of the possible judgment,
upon which the hope of plaintiff for a return of any part of
her money was based; it was the only way that there could
possibly be a "remainder."

When conditions precedent are invoked, practically to work
a forfeiture, there can be no inadvertence, or mistake, which
will excuse non-performance of the exact conditions of the
contract, performance of which were incumbent upon the
party insisting on the stringency of the rule.

And this failure upon the part of the company to keep the
terms of the agreement resulted to the disadvantage of the
plaintiff in this, that it made it all the more difficult, if not
impossible, to obtain Antonelle's consent.  The evidence shows
that he knew nothing of the agreement between the plaintiff
and the company.  If he had, he certainly would not have
permitted the judgment which was taken against the firm, at
least a year before all the money was collected from the city
hall and harbor commissioners, to have been taken against it
in an amount by fifteen thousand dollars too much.  Such

judgment, however, having been improperly taken and become final, it was only natural to suppose that he would not consent to the payment of this money to plaintiff (which he did not do) unless the company released the firm from the excess in the judgment obtained against it by the company's violation of the agreement with the plaintiff. This the company might or might not do. Whether it would or not is unimportant. If the contract had been performed on the company's part, as its terms required, there would have been no room for dispute between it and Antonelle about the judgment, and it is to be presumed that, if he had been justly treated, and the judgment satisfied out of the funds obtained from the commissioners, he would have consented to the return of the remainder to the plaintiff, as partial reimbursement for her money expended in his firm's behalf.

But aside from these considerations we are satisfied, that the stipulations of the parties in the contract upon this whole subject, were not conditions precedent, but, in effect, simply covenants. As said by Parsons, "Words of proviso and condition will be construed into words of covenant, when such is the apparent intent and meaning of the parties." (2 Parsons on Contracts, sec. 511.) "The whole context also of the document is to be considered. The effect of the condition cannot be determined without taking into consideration the stipulations that it qualifies, and it will be construed, as far as possible, so as to give efficiency to the entire contract. The construction depends upon the intention of the parties, to be collected in each particular case from the terms of the agreement itself, and from the subject-matter to which it relates. Whether a provision in a contract is a stipulation . . . or a condition . . . is to be gathered from the whole document." (Wharton on Contracts, sec. 555.)

The parties themselves speak of the "keeping of the *covenants* herein contained" and it is to be presumed they so considered them. It is the only fair way to look at the entire contract. It is not to be presumed, that the defendant intended to take any unconscionable advantage of the plaintiff when the contract was drawn; or that she, or it, intended that the payment of this money should depend upon the arbitrary will or caprice of Antonelle, in giving, or withholding,

his consent. The contract does not specify what the conse-
quences shall be if Antonelle does not consent. Is it to be
assumed, or, does the good sense and clear construction of
the contract warrant us in believing, that it was intended, as
the result of plaintiff's inability to obtain Antonelle's con-
sent, that the defendant should retain the money; that it
should be forfeited to it? Certainly not. Upon the other hand,
is it not more reasonable to believe, that it was intended by
this proviso simply, that plaintiff covenanted to obtain Anto-
nelle's consent, or, to be responsible for any damages resulting
from her failure to do so? As said in *Front-Street R. R. Co.*
v. *Butler,* 50 Cal. 577: ''Courts are disinclined, as was ob-
served by the court of appeals of New York (*Tipton* v.
*Feitner,* 20 N. Y. 432) to construe the stipulations of a con-
tract as conditions precedent, unless compelled by the lan-
guage of the contract, plainly expressed. The reason of this
disinclination is, that such a construction prevents the court
from dealing out justice to the parties according to the equi-
ties of the case. The case at bar affords an instance of the
injustice which would be wrought by such a construction of
the contract of these parties." We have discussed this phase
of the agreement between the parties, as far as we deem neces-
sary, and while we are satisfied that it should be treated as
a covenant, we are equally satisfied that as a condition prece-
dent, the defendant, having violated every term of the con-
tract under which Antonelle's consent was to be obtained,
thereby discharged plaintiff from the obligation of obtain-
ing it.

2. It is next insisted that the contract is illegal and void;
that by agreeing to pay over to plaintiff the remainder of the
funds to be collected on the assigned claims of Antonelle &
Doe, against the city hall and harbor commissioners, without
its consent, the company agreed to commit a civil injury
against that firm, and hence the agreement is invalid. The
appellant does not seem to have presented this point, so far as
the record shows, at any time until the filing of the closing
brief on this appeal. Neither did any invalidity of the con-
tract appear to have suggested itself until after the company
obtained plaintiff's money. The contract seems to have been
valid enough for that purpose, and, only an extreme solicitude

for the interests of Antonelle & Doe, now prompts appellant to endeavor to repudiate an agreement under which it has, so far, obtained all the advantage, upon the theory that it infringed on the rights of Antonelle & Doe. But that firm, after their assignment, could have no possible interest in these funds, except to see that they were applied, when collected, on its debt to the company. It had made an absolute assignment of them for that purpose. Their validity was in litigation, and when collected in full, they would not pay the indebtedness due from it to the company by several thousand dollars. Under such circumstances, can it be said that the firm of Antonelle & Doe had any interest in the funds, or that as to said firm there could be any surplus or remainder to which it would be entitled? On the contrary, for all practical purposes, the uncollected money was the property of the company, and it dealt with the plaintiff on that basis and in harmony with the fact. Had it believed that the firm of Antonelle & Doe could have any probable future interest in these funds, it would undoubtedly have provided in the contract, not for the obtaining by plaintiff of the individual consent of J. S. Antonelle for their payment, but the consent of the firm of Antonelle & Doe.

3. As to the sufficiency of the complaint. Plaintiff did not set forth the contract in her complaint *in hæc verba,* nor make mention of the provision concerning the obtaining of Antonelle's consent. But the legal effect of the contract as plaintiff relied on it was pleaded, and the complaint stated a cause of action. On the trial the court admitted the contract in evidence, over an objection of the appellants, that there was a fatal variance between the pleading and the proof, and this is now relied on as error.

Under the code no variance is to be deemed material, "unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (Code Civ. Proc., sec. 469; *Carter* v. *Baldwin,* 95 Cal. 478; *Amador* v. *Amador,* 114 Cal. 348; *Stockton* v. *Glens Falls Ins. Co.,* 121 Cal. 171.) As appellant set out the contract in full in its answer, and specially averred breach of this alleged condition precedent, it cannot be said that it was at all misled by plaintiff's failure to aver what it knew, what it pleaded, and what it

relied on. Besides, when the legal effect of an instrument is pleaded, and any of its conditions are omitted in the complaint, the omission is cured, if the defendant in his answer sets forth the entire contract. (*Cohen* v. *Knox,* 90 Cal. 266; *Daggett* v. *Gray,* 110 Cal. 169.) Defendant made this same point on its motion for a nonsuit, which was properly denied.

We have examined the evidence and findings to determine whether there is any merit in defendant's claim that some six of the latter are not sustained by the evidence, but find no merit in the contention, nor is there any merit in the alleged errors of law.

4. As to the claim of Antonelle & Doe, that they are entitled to the money sued for: They consented to a judgment in favor of the lumber company for $36,713.74 and assigned all their interest in the funds to be collected from the boards of commissioners, and agreed that these, when collected, should be applied to the payment of the judgment. As to them, the judgment recovered by the company was final. The assignment of the funds for its payment was absolute, and as the assigned funds were less than the face of the judgment, those funds, as between the company and themselves, belonged to the former. If the company saw fit to agree with plaintiff, that in consideration of her paying fifteen thousand dollars on the firm's debts, it would agree to pay her the remainder of the funds ascertained in a certain way, that is no concern of Antonelle & Doe. Besides, they are not parties to the contract between plaintiff and the lumber company. If the company has any money belonging to them, they must settle that with the company, leaving plaintiff and the company to an adjustment of their respective rights under their own contract.

5. As to the defendant Antonelle intervening in his own right, it is only necessary to say, that he never had a shadow of a claim, individually or otherwise, to any of the money paid by plaintiff upon his firm's indebtedness.

The judgment and order appealed from are affirmed.

McFarland, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment. The intervention of J. S. Antonelle is disposed of by the find-

ing of the court upon sufficient evidence that the fifteen thousand dollars paid by plaintiff to defendant was her money.

The intervention of Antonelle & Doe is without merit. There is no pretense that this fifteen thousand dollars was ever a portion of the firm assets, and even if it had been the individual property of Mr. Antonelle, the defendant would have been bound to apply the firm assets in its hands as far as they would go to the satisfaction of its claim against the firm before resorting to his individual property to supply the deficiency. But it was the property, as now determined, of the plaintiff. She did not volunteer to pay it out on the firm's debts, but being in a position requiring a sacrifice of a portion of her property in order to recover the possession and use of the balance she simply made a compromise with defendant by which she advanced fifteen thousand dollars upon its claim under an agreement providing in substance and effect that she should be repaid so much of her advance as might remain after satisfaction of the defendant's judgment against the firm—the partnership assets to be first applied thereon as far as they would go. It is true the agreement was not put in this form, but it was to this effect and it was an agreement which, so far from violating any right of Antonelle & Doe, was greatly to their advantage. Every dollar paid by this arrangement on the firm indebtedness (about seven thousand dollars, according to the findings) was in effect a gift from plaintiff to them, and their claim to the surplus, based wholly on the mere form of the stipulation, and regardless of its substance and effect, is entirely without merit.

As to the defendant's appeal, the point which it most insists·upon is that the plaintiff commenced her action without having performed the condition precedent of obtaining her husband's written consent to the payment of the fund in controversy to her. It is evident that this proviso was inserted in the agreement merely as a precaution against a double liability in case the husband should make the claim which the defendant had itself made; that is, that the fund belonged to him. The alternative of her failure to procure his consent was not that the defendant should keep, and appropriate to its own use, a fund to which it never had any right, but merely that it should not be obliged to pay until it was

determined in some manner binding upon the adverse claim-ants which of them had the superior right. The failure of the plaintiff to get her husband's consent did not deprive her of a right of action, but only of the right to receive the money on her mere demand, and without a judgment binding upon her husband and establishing her right. In this action such a judgment has been given by a court having jurisdiction of the subject-matter and of the parties. The defendant in pay-ing the plaintiff's judgment is fully protected against any claim by the intervener.